IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

THOMAS WALTON, INDIVIDUALLY AND
ON BEHALF OF THE WRONGFUL DEATH
BENEFICIARIES of ANNIE WALTON,
Deceased; and ALIVEN WALTON                                              PLAINTIFFS

vs.                                             CIVIL ACTION NO.: 1:20-cv-00040-SA-DAS

J.B. LONG; CITY OF VERONA;
and JOHN DOES 1-25                                                       DEFENDANTS

ORDER

On June 10, 2021, this Court entered an Order and Memorandum Opinion [115] granting the Defendants' respective Motions for Summary Judgment [71, 74] and dismissing all claims *with prejudice*.[1] Shortly thereafter, the Plaintiffs filed a Motion for Reconsideration [116]. The Defendants responded in opposition. Having reviewed the filings, along with the relevant authorities, the Court is prepared to rule.

*Reconsideration Standard*

Rule 59(e) of the Federal Rules of Civil Procedure authorizes a district court to "alter or amend a judgment." FED. R. CIV. P. 59(e). "A Rule 59 motion is the proper vehicle by which a party can 'correct manifest error of law or fact' or 'present newly discovered evidence.'" *Surratt v. Tractor Supply Co.*, 2020 WL 6051260 at *1 (N.D. Miss. Oct. 13, 2020) (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 477 (5th Cir. 2004)) (additional citation omitted). The Fifth Circuit has explicitly directed that Rule 59(e) motions should not be granted unless: "(1) the facts discovered are of such a nature that they would probably change the outcome; (2) the facts alleged are actually newly discovered and could not have been discovered earlier by proper diligence; and

---

[1] In its Order and Memorandum Opinion [115], the Court set forth in detail the facts and circumstances surrounding this case. For the sake of brevity, the Court will not repeat that entire factual recitation here.

(3) the facts are not merely cumulative or impeaching." *Infusion Resources, Inc. v. Minimed, Inc.*, 351 F.3d 688, 696-97 (5th Cir. 2003).

Importantly, "motions for reconsideration 'should not be used to . . . re-urge matters that have already been advanced by a party.'" *O'Hara v. Travelers, Also Named, The Automobile Ins. Co. of Hartford, Conn.*, 2012 WL 12884579, *1 (S.D. Miss. July 20, 2012) (quoting *Nationalist Movement v. Town of Jena*, 321 F. App'x 359, 364 (5th Cir. 2009)) (additional citations omitted). Stated differently, "[a] party should not attempt to use the Rule 59 motion for the purpose of 'rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Surratt*, 2020 WL 6051260 at *1.

*Analysis and Discussion*

The Plaintiffs alleged three different causes of action in their Complaint [1]. Particularly, they asserted Section 1983 claims against both Defendants based upon purported due process violations arising from (1) abuse of executive power; and (2) state created danger. The Plaintiffs also asserted a state law claim against the City of Verona.

As noted above, the Court granted summary judgment in the Defendants' favor on all claims. *See* [115]. In their Reconsideration Memorandum [117], the Plaintiffs are not clear on which of the claims they seek reconsideration. Instead, arguing that this Court improperly failed to view the evidence in their favor, the Plaintiffs generally contend there were genuine issues of material fact as to whether Long carried out his obligations as Police Chief, including: (1) "the arrest warrant established probable cause, and the recanted witness statements and the father's alibi did not change that;" and (2) "a telephonic bond hearing was not the 'normal procedure.'" [117] at p. 4, 9. The Plaintiffs also aver that "[t]here were genuine issues of material fact about Long withholding information from Judge Holland." *Id*. at p. 9-10. Finally, they assert that "[t]here was

2

no 'misunderstanding' about what Judge Hopkins discussed with Long." *Id*. at p. 12. They therefore contend that the Court should not have granted summary judgment in the Defendants' favor.

    *I.*    *Federal Claims*

The Court begins with the Plaintiffs' Fourteenth Amendment state-created danger claim. As addressed at length in the Court's previous Order and Memorandum Opinion [115], that claim is not recognized in the Fifth Circuit. In particular, this Court, after setting forth the general parameters of a state-created danger claim, noted that "the Fifth Circuit has consistently, on numerous occasions, declined to join its sister circuits in recognizing [the state-created danger] theory on multiple occasions. . . Although recognizing the arguments urged by the Plaintiffs, *this Court is bound by the above-referenced authorities which clearly and unequivocally decline to adopt the state-created danger theory*." [115] at p. 8 (citations omitted) (emphasis added). While the Plaintiffs' Reconsideration Memorandum [117] specifically identifies issues of fact which they contend the Court improperly weighed, the Plaintiffs provide no legal argument that the Court improperly interpreted the law in this area.[2] Ultimately, regardless of the underlying facts, the state-created danger theory is not currently recognized in the Fifth Circuit. The Court declines to change its ruling on the Plaintiffs' state-created danger claim.

The Court next turns to the Plaintiff's Fourteenth Amendment abuse of executive power claim. As in its Order and Memorandum Opinion [115], the Court begins with the allegations of the Plaintiffs' Complaint [1] on that claim:

---

[2] The Plaintiffs did argue in their summary judgment briefing that the state-created danger theory is cognizable in the Fifth Circuit. *See* [96] at p. 12-18. This argument is inaccurate, as illustrated by a recent Fifth Circuit opinion in a case originating from this Court, wherein the Fifth Circuit noted that, in declining to apply the state-created danger theory, "[t]he district court *correctly declined to stray from circuit precedent*." *Robinson v. Webster Cnty., Miss.*, 825 F. App'x 192, 196 (5th Cir. 2020) (emphasis added).

> 29. While acting under the color of state law, Long, using his executive power as the Chief of Police, arranged for Betts to be released without legal authority or justification and withheld information relevant to whether Betts should have remained incarcerated due to his previous arrests and continued violent behavior.
>
> 30. Long's conduct rises above the "conscience shocking" level, because he arranged Betts' first release, allowing Betts to commit another violent shooting offense, and allowed for Betts to be released a second time without informing the Lee County Justice Court of Betts' recent violent history and previous first-degree murder charge.
>
> 31. Betts could not have been released without Long's concerted, deliberate and intentional abuse of executive power, which enabled Betts to shoot and kill Annie Walton and injure Aliven Walton.

[1] at p. 5.

Concerning this claim, the Court finds instructive the Fifth Circuit's *en banc* decision in *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849 (5th Cir. 2012). In pertinent part, the Fifth Circuit described the tragic facts of *Covington* as follows:

> At some point during the school year, Jane's guardians filled out a "Permission to Check-Out Form," on which they listed the names of the individuals with exclusive permission to "check out" Jane from school during the school day. On six separate occasions between September 2007 and January 2008, school employees allowed a man named Tommy Keyes ("Keyes"), who allegedly bore no relation to Jane and was not listed on her check-out form, to take Jane from school. On these occasions, Keyes took Jane from school without the knowledge or consent of her parents or guardians, sexually molested her, and subsequently returned her to school. On the first five occasions, Keyes signed out Jane as her father. On the final occasion, he signed her out as her mother. The complaint alleges that Keyes was able to gain access to Jane because the policy promulgated by the various school officials permitted school employees to release Jane to Keyes without first verifying Keyes's identification or whether he was among those people listed on her "Permission to Check-Out Form." The complaint contends that this policy created a danger to students and the implementation and execution of the policy constituted deliberate indifference towards

4

> the rights and safety of those students, including Jane. This policy is alleged to be the direct and proximate cause of Jane's injury.

*Id.* at 853.

After reiterating that the state-created danger theory has never been recognized in the Fifth Circuit and therefore finding that claim was not viable, the *en banc* court turned to the plaintiff's Fourteenth Amendment "shocks the conscience" claim against the school district. *Id.* at 866-67. The Fifth Circuit provided some background on that theory of recovery:

> The Supreme Court recognized the shocks the conscience standard in *Rochin v. California*, 342 U.S. 165, 72 S. Ct. 205, 96 L. Ed. 183 (1952). There, the Court found a violation of Rochin's substantive due process rights after police officers who had arrested Rochin ordered doctors to pump Rochin's stomach to induce him to vomit two capsules of morphine that he had previously swallowed. *Id.* at 166, 72 S. Ct. 205. The Court determined that the state's conduct "shocked the conscience," and therefore violated Rochin's due process rights. Later, in *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998), the Supreme Court explained that substantive due process is violated by executive action "*only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.*'" . . . Conduct sufficient to shock the conscience for substantive due process purposes has been described in several different ways. It has been described as conduct that "violates the decencies of civilized conduct"; conduct that is "so brutal and offensive that it does not comport with traditional ideas of fair play and decency"; conduct that "interferes with rights implicit in the concept of ordered liberty"; and conduct that "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 846-47 & n. 8, 118 S. Ct. 1708.

*Id.* at 867 (internal citations omitted) (emphasis added).

The Fifth Circuit ultimately held that the plaintiff could not satisfy this high standard. *Id.* at 868. In particular, the Fifth Circuit emphasized the general, overarching rule articulated by the Supreme Court in *Deshaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 197, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989), wherein the Supreme Court concluded that "a State's failure to

5

protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id*. Then, the Fifth Circuit cautioned that it "must be careful not to read the *Rochin* shocks the conscience standard as a separate exception to the *DeShaney* principle." *Id*. The Fifth Circuit continued, "[t]he actual harm inflicted upon Jane in this case was caused by private actor Tommy Keyes, and after *DeShaney*, the state cannot be held constitutionally liable for its 'failure to protect an individual against private violence,' save for the special relationship theory and, in some circuites, the state-created danger theory. *To allow the Does to proceed on a shocks the conscience theory without first demonstrating a constitutional duty to protect would be wholly inconsistent with DeShaney*." *Id*. at 868-69 (quoting *DeShaney*, 489 U.S. at 197) (emphasis added).

Applying *Covington* to the case at hand, this Court likewise finds that the Plaintiffs cannot satisfy the "shocks the conscience" standard. Put simply, this claim appears to be another way to plead a state-created danger (or private violence) claim. Like the plaintiff in *Covington*, the Plaintiffs here have not shown that the Defendants had any *constitutional duty to protect* them from the violence of Betts, a *private* actor. An obvious and critical distinction between the case at bar and *Rochin* (where the Supreme Court initially recognized the "shocks the conscience" standard in the case where officer directed doctors to pump the plaintiff's stomach) is the present case does not involve any allegation that the state actor (Long) directed Betts to engage in the underlying conduct. In fact, the Fifth Circuit in *Covington* cited several cases where the "shocks the conscience" standard has been utilized to impose liability—cases which involved state actors taking *direct* action toward the plaintiffs. *See, e.g.*, *Checki v. Webb*, 785 F.2d 534, 535-36, 538 (5th Cir. 1985) (state trooper intentionally used his vehicle to terrorize motorist and passenger); *Shillingford v. Holmes*, 634 F.2d 263, 264-65 (5th Cir. 1981) (abrogated on other grounds) (police officer intentionally struck tourist because he was photographing the police officer and fellow

6

officers apprehending a boy on the street during parade); *Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069, 1071, 1075-76 (11th Cir. 2000) (student blinded in one eye when a coach intentionally hit him in the head with a metal weight); *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 797 (8th Cir. 1998) (rape of a woman at her house by a police officer after he stopped her for a traffic violation). The case *sub judice* (where there is no contention that Long directed Betts to engage in the drive-by shooting) is not synonymous.

As noted above, the Plaintiffs' arguments in their Response Memorandum [117] involve contentions that Long acted improperly in releasing Betts from custody before he committed the drive-by shooting. However, even taking the Plaintiffs' allegations as true, they cannot overcome the fact that their claim inherently involves an attempt to hold the Defendants liable for private violence. Stated in summary judgment terms, the Plaintiffs point to ways in which they believe this Court disregarded genuine questions of fact; but even accepting the Plaintiffs' arguments, they have not emphasized any genuine issues of *material* fact as it pertains to the abuse of executive power claim. The Court declines to change its decision as to that claim.

    II.    *State Law Claim*

That leaves only the state law claim against the City of Verona. As the Court explained in detail in its previous Order and Memorandum Opinion [115], under the police protection exemption of the MTCA, "the City can only be liable for its officers' conduct if those officers acted with reckless disregard of the Plaintiff's safety and well-being at the time of the injury." [115] at p. 13-14 (quoting *Washington v. Burts*, 2017 WL 2376329, at *4 (N.D. Miss. May 31, 2017)). After acknowledging the high standard associated with reckless disregard, the Court found that the Plaintiffs had not met that burden and granted summary judgment in the City's favor. *See generally* [115] at p. 13-15.

7

One of the Plaintiffs' assigned points of error relates to whether a telephonic bond hearing was the "normal procedure." In its previous Order and Memorandum Opinion [115], the Court specifically noted that "Chief Long testified that it was 'normal procedure' for him to conduct a telephonic bond hearing if it were with the judge who wrote the warrant for the Defendant and to have the Judge sign it at a later date." [115] at p. 10-11. On the other hand, the Plaintiffs emphasize portions of the Affidavit [97] of Justice Court Judge Hopkins, who in pertinent part stated:

> 2. J.B. Long ("Long") was the Chief of Police for Verona at the time Betts was arrested on that warrant. Following Betts' arrest, Long called me about allowing Betts to waive his initial appearance for the murder charge. I informed Long I did not allow waivers for murder charges. I was out of town at the time of this telephone conversation, *so I instructed Long to present Betts to another judge that was in town, whether it be a County Judge or a Circuit Judge, for an initial appearance.*
>
> 3. A few hours after speaking to Long, I was informed by the Chief Deputy at the Lee County Detention Center that Betts had been released on a recognizance bond. To be sure, *I never authorized Betts* [sic] *release on either a $50,000 bond or a recognizance bond.*
>
> 4. The following Monday, Long asked me to sign a waiver of initial appearance for Betts, but I refused to do so because I never set a bond for Betts on the murder charge.
>
> 5. I would never authorize a bond for a murder charge over the phone.

[97] at p. 1-2 (emphasis added).

The Plaintiffs also point to one specific portion of Long's deposition, wherein he testified:

> Q. Okay. Would you agree with me that someone picked up on an arrest warrant for first degree murder is required to appear before a Judge before being released?
>
> . . .
>
> A. That is true. Those are – *that is their decision.*

[116], Ex. 4 at p. 2-3 (emphasis added).

The Plaintiffs emphasize these discrepancies and ultimately take issue with the Court's conclusion that "Chief Long and Judge Hopkins had a misunderstanding over the telephone and that Betts was ultimately released on bond as a result." [115] at p. 14. Instead, they contend that while Long claimed that the release was because of a misunderstanding, there is evidence in the record which, at a minimum, creates a question of fact on that point.

In addition, the Plaintiffs aver that there are genuine issues of material fact "about Long withholding information from Judge Holland." [117] at p. 9-10. As explained in the Court's previous Order and Memorandum Opinion [115], this exchange occurred when Betts appeared before Judge Holland on the aggravated assault charges in July 2018. The Court addressed this issue in some detail, ultimately concluding as follows:

> The Court finds persuasive the holding from *Fair*, where an omission to inform a Judge as to the nature of a previous charge during a court proceeding did not rise to the level of reckless disregard. 930 So.2d 467. Here, Chief Long's conduct also does not reach the requisite standard, especially in light of the fact that Chief Long did inform Judge Holland that Betts was involved in a shooting at a carwash and that the case was going to the grand jury. The Court finds that the Plaintiffs have not come forward with sufficient evidence to create a genuine issue of material fact as to whether Chief Long acted with reckless disregard in either instance.

[115] at p. 15.

On this point, the Plaintiffs emphasize two portions of Long's deposition. First, they point to Long's admission that Judge Holland should have revoked Betts' bond if she had been fully apprised of the underlying fact that Betts had been out on bond for a murder charge:

> Q. Okay. She should have revoked his bond, to be clear, right?
>
> . . .

9

> THE WITNESS: If everything was made known about that, yes.

[93], Ex. 7 at p. 44.

In another portion of his deposition, Long testified that while he did reference that Betts had been involved in the previous car wash shooting "as far as me telling her what he was out on, *I did not*. I just told her he was already out on bond already." [93], Ex. 7 at p. 38 (emphasis added).

Against this backdrop, the Court again turns to the applicable law. In pertinent part, Mississippi Code Section 11-46-9(1) provides:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
> . . .
> (c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury[.]

MISS. CODE ANN. § 11-46-9(1)(c).

Under this exemption—often referred to as the police protection exemption—immunity still applies "unless the act or omission complained of evinces a 'reckless disregard of the safety and well-being' of others." *Chapman v. City of Quitman*, 954 So.2d 468, 474 (Miss. Ct. App. 2007) (quoting *Miss. Dept. of Pub. Safety v. Dunn*, 861 So.2d 990, 994 (Miss. 2003)). "The Mississippi Supreme Court has held that 'reckless disregard' under Section 11-46-9(1)(c) embraces willful and wanton conduct which requires knowingly or intentionally doing a thing or wrongful act." *Smith v. City of Southaven*, 308 So.3d 456, 462 (Miss. Ct. App. 2020) (quoting *Rayner v. Pennington*, 25 So.3d 305, 308-09 (Miss. 2010)). In *Smith*, the Court of Appeals further noted:

> In *Rayner*, the supreme court recognized that "reckless disregard" requires "the voluntary doing . . . of an improper or wrongful act, or with knowledge of existing conditions, the voluntary refraining

> from doing a proper or prudent act when such act or failure to act evinces an entire abandonment of any care, and heedless indifference to results which may follow and the reckless taking of chance of an accident happening without intent that any occur.

*Id*. (quoting *Rayner*, 25 So.3d at 309). "Reckless disregard usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow." *Id*. (quoting *Rayner*, 25 So.3d at 309).

Considering the knowledge component of reckless disregard articulated in these cases, the Court finds important Long's own admission that Judge Holland should have revoked Betts' bond "if everything was made known[.]" [93], Ex. 7 at p. 44; *see*, *e.g.*, *Smith*, 308 So.3d at 462 (noting that "reckless disregard" encompasses willful and wanton conduct which requires *knowingly* or *intentionally* doing a thing wrongful act). This testimony weighs in favor of Long having, at least to some extent, appreciated that Judge Holland would have been required to revoke Betts' bond if he had fully explained the underlying facts, which he *admittedly* did not do. Furthermore, when questioned about whether he explained to Judge Holland that Betts was out on bond for a murder charge, Long testified "*I did not*. I just told her he was already out on bond already." [93], Ex. 7 at p. 38 (emphasis added). In other words, the record includes at least some support for the Plaintiffs' theory that Long *consciously chose* to keep certain information from Judge Holland.

By that same token, the Court also finds noteworthy Long's deposition testimony as to Betts' first release after the carwash murder without appearing before a judge. Again, on the issue of whether a murder suspect should be released in that context, Long testified "that is [the judge's] decision." [116], Ex. 4 at p. 2-3. This testimony, at least arguably, implies that Long knew or believed that it was a judge's decision as to whether Betts should be released. And while Long contends that Judge Hopkins approved Betts' release via a telephone conference, Judge Hopkins' Affidavit [97] specifically contradicts that assertion. As emphasized above, Judge Hopkins'

11

recollection of the conversation was that he did not authorize Betts' release and that he told Long to take Betts before another judge.

Having again reviewed the record in this case—particularly in light of the specific matters the Plaintiffs have raised—and keeping in mind the Court's role at the summary judgment stage, the Court finds that the Plaintiffs have shown the existence of a genuine issue of material fact as to whether Long acted in reckless disregard for purposes of the police protection exemption. *See, e.g.*, *Waste Management of Louisiana, LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)) (noting that, at the summary judgment stage, "the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion.").

However, the Court is cognizant that, in addition to establishing a question of fact as to whether Long acted in reckless disregard, the Plaintiffs must also show causation. *See, e.g.*, *Ogburn v. City of Wiggins*, 919 So.2d 85, 91 (Miss. Ct. App. 2005) ("Even if Ogburn proved that Officer Smith acted in reckless disregard, he must also establish that Smith's actions were the proximate cause of the accident.").[3]

Concerning causation, the Court finds pertinent the Mississippi Court of Appeals' decision in *Johnson v. Alcorn State Univ.*, 929 So.2d 398 (Miss. Ct. App. 2006). There, on the night of October 8, 2001, Demetrice Williams, a non-student, went onto Alcorn State's campus, became involved in an altercation, and ultimately shot two students—killing one of them, JeKelcy Johnson. *Id.* at 401. JeKelcy's mother brought a wrongful death action on JeKelcy's behalf, claiming

---

[3] Because the Court in its previous Order and Memorandum Opinion [115] held that the Plaintiffs had not come forward with sufficient evidence to create a genuine issue of material fact as to reckless indifference, it did not address causation. In light of its holding herein, the Court will now address the causation arguments Verona raised in its original Motion for Summary Judgment [71].

(among other things) that Alcorn State campus police acted negligently in letting Demetrice onto the campus on the night of the shooting. *Id*. In particular, the campus police department was required to "log-in" each non-student visitor that entered the campus. *Id*. at 402. There was admittedly no record of Demetrice's car on the log-in sheet for that night. *Id*. The plaintiffs claimed that such conduct constituted reckless disregard for the safety of the students, including JeKelcy, and that the police protection exemption to the MTCA was therefore inapplicable. *Id*. The trial court "held that the campus police department acted in reckless disregard for the safety of students and faculty at Alcorn State when it failed to follow its procedure for logging-in vehicles at the welcome centers." *Id*. at 404. However, the trial court nevertheless entered judgment against the plaintiffs on the basis that they had not established a causal connection between the police officer's conduct and the subsequent shooting. *Id*.

On appeal, the Court of Appeals set forth the applicable causation standard:

> Even if we assume that the circuit court was correct in finding reckless disregard, [the plaintiffs] must also establish that the campus police department's actions were the proximate cause of JeKelcy's death[.] Proximate cause requires: (1) cause in fact; and (2) foreseeability. Cause in fact means that the act or omission was a substantial factor in bringing about the injury, and without it the harm would not have occurred. Foreseeability means that a person of ordinary intelligence should have anticipated the dangers that his negligent act created for others.

*Id*. at 411 (citing *Ogburn*, 919 So.2d at 91-92) (internal citations and quotation marks omitted).

In addition, the Court of Appeals discussed the impact of a superceding cause on the general causation analysis. *Id*. at 413. In particular, the court noted "[a] superceding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." *Id*. (quoting *Green v. Dalewood Prop. Owners' Ass'n, Inc.*, 919 So.2d 1000 (Miss. Ct. App. 2005)).

13

On this issue, the Court of Appeals noted "[w]hat is more, the police department's failure to log-in someone would not normally result in a shooting. Not only that, operation of the intervening force, Demetrice's decision to draw a pistol and shoot JeKelcy and Roddel, *was entirely Demetrice's decision*. The record contains *no evidence that Alcorn State somehow coerced Demetrice into shooting* JeKelcy and Roddel." *Id*. (emphasis added).

As to the cause in fact requirement, the Court has no real concern finding the existence of a question of fact, as without Long having engaged in the subject conduct, Betts would likely have remained in custody and not committed the drive-by shooting. There at least remain questions of fact on that point so as to preclude summary judgment.

In the Court's view, foreseeability is a closer call. As noted above, "[f]oreseeability means that a person of ordinary intelligence should have anticipated the dangers that his negligent act created for others." *Johnson*, 929 So.2d at 411.

Arguing that the Plaintiffs cannot show that the drive-by shooting was foreseeable, Verona emphasizes that the criminal act of Betts (like the criminal act of the shooter in *Johnson*) was entirely Betts' decision and that there is no evidence that Long or any Verona employee coerced Betts into committing the shooting. On the other hand, the Plaintiffs cite the Mississippi Supreme Court's decision in *Williams ex rel. Raymond v. Wal-Mart Stores, East, L.P.*, 99 So.3d 112, 118 (Miss. 2012).

In *Williams*, the plaintiffs sought to impose liability against Wal-Mart after one of its sales clerks (in violation of federal law) sold ammunition to a minor, who later used the ammunition to shoot and kill his mother's boyfriend. *Id*. at 113. The Supreme Court held that "generally, criminal acts can be intervening causes which break the causal connection with the defendant's negligent act, *if the criminal act is not within the realm of reasonable foreseeability*." *Id*. (quoting *Double*

14

*Quick, Inc. v. Moore*, 73 So.3d 1162, 116-67 (Miss. 2011)) (additional citations and internal quotation marks omitted) (emphasis added). The Supreme Court ultimately held that "[i]n cases like the one before us, a minor's criminal, intentional, malicious act—an act beyond mere negligence—breaks the causal connection *unless the license dealer knew or had reason to know that the minor had a propensity to commit such an act*." *Id*. at 119 (citing *Robinson v. Howard Brothers of Jackson*, 372 So.2d 1074, 1076 (Miss. 1979); *Howard Brothers of Phenix City, Inc. v. Penley*, 492 So.2d 965, 968 (Miss. 1986)) (emphasis added).

The Court certainly finds relevant the fact that there is no evidence (or even an allegation) that Long or any Verona employee coerced Betts into committing the drive-by shooting. In other words, there is nothing to suggest that the shooting was anything other than *entirely Betts' decision*. Furthermore, the Court notes that the shooting occurred on December 7, 2018—over four months after Betts appeared before Justice Court Judge Holland on July 26, 2018, for his initial appearance on the aggravated assault charges and approximately eight months after his initial release following the carwash murder. On the other hand, the Court appreciates the Plaintiffs' position that Long had reason to know of Betts' propensity to commit criminal acts. After all, Long had been involved in both of the prior investigations and arrests of Betts (both of which involved extremely violent conduct on his part within a relatively brief time period). While the *Williams* case is undoubtedly factually distinguishable from the case *sub judice*, it does explain a way in which the casual connection can remain intact despite the commission of a criminal act when there was reason to know of the actor's propensity to commit such an act. The Court once again notes that its role at the summary judgment stage is not to decide factual controversies but, instead, determine whether any such controversies exist. *See, e.g.*, *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020) ("The resolution of a genuine issue of material fact is the exclusive province of the trier of fact and may

not be decided at the summary judgment stage.") (citations omitted). The Court finds that the Plaintiffs have met this burden, thereby rendering summary judgment inappropriate.

In its original request for summary judgment, Verona also argued the ministerial duty exemption and the discretionary function exemption precluded the Plaintiffs' state law claim. Because the Court found the police protection exemption applicable in its previous Order and Memorandum Opinion [115], it did not address Verona's arguments on those exemptions but will do so now.

The ministerial duty exemption shields governmental entities for claims "[a]rising out of any act or omission of an employee of a governmental entity exercising ordinary care in reliance up, or in the execution or performance of, or in the failure to execute or perform, a statute, ordinance or regulation, whether or not the state, ordinance or regulation be valid[.]" MISS. CODE ANN. § 11-46-9(1)(b). "An act is ministerial if the duty is one which has been positively imposed by law and its performance required at a time and in a manner or under conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion." *Covington Cnty. Sch. Dist. v. Magee*, 29 So.3d 1, 5 (Miss. 2010) (quoting *Stewart ex rel. Womack v. City of Jackson*, 804 So.2d 1041, 1048 (Miss. 2002)) (additional citation omitted). If the subject conduct is deemed ministerial, "it is then protected from liability only if ordinary care is exercised in performing or failing to perform the statutory duty or regulation." *Id*. (citations omitted).

As noted by Verona in its briefing, "the key question is whether Long exercised ordinary care with respect to any conduct that was positively designated to him by a statute." [72] at p. 21. Verona contends that Long exercised ordinary care in the initial release of Betts "because "it is

16

undisputed that the area judges were out of town and that Long called, and spoke with, Judge Hopkins, who Long understood to say that Betts' bond would be set at $50,000." *Id*.

While Verona may prevail on this theory at trial, the Court finds that questions of fact remain. As noted above, Judge Hopkins disputes Long's version of events as to their phone call. This appears to be a question for a factfinder, not this Court at the summary judgment stage, to decide.

Under the discretionary function exemption, a governmental entity retains immunity for any claim "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused[.]" MISS. CODE ANN. § 11-46-9(1)(d). The Mississippi Supreme Court has articulated a "traditional, two-part, public-policy function test to determine when Section 11-46-9(1)(d) applies." *City of Clinton v. Torres*, 252 So.3d 34, 39 (Miss. 2018) (citing *Wilcher v. Lincoln Cnty. Bd. of Supervisors*, 243 So.3d 177 (Miss. 2018)). Under that test, the reviewing court "first must ascertain whether the activity in question involved an element of choice or judgment. If so, [the reviewing court] also must decide whether that choice or judgment involved social, economic, or political-policy considerations." *Id*. (internal citations and quotation marks omitted).

In its summary judgment briefing, Verona argued that Long's initial decision to release Betts "involved an element of judgment with respect to whether there was sufficient evidence to continue to prosecute Betts for the murder of Green, as well as impacted policy considerations." [72] at p. 22. Verona additionally asserted that "while Long's not informing Judge Holland of the exact nature of the March 2018 charge during the July 2018 initial appearance may be a closer call, it did involve an element of judgment and policy considerations." *Id*. at p. 22-23.

The Court rejects these arguments for summary judgment purposes. Whether Long's conduct and the decisions he made in releasing Betts in April 2018 and admittedly failing to fully inform Judge Holland of the underlying facts during the July 2018 initial appearance involved social, economic, or political policy considerations is not a question that the Court should decide at this stage in the proceedings. Instead, these questions of fact should be resolved at trial.

*Conclusion*

For the reasons set forth above, the Plaintiffs' Motion for Reconsideration [116] is GRANTED IN PART and DENIED IN PART. To the extent the Plaintiffs seek reconsideration of the Court's decision on their federal claims, the request is DENIED. However, their request as to their state law claim against the City of Verona is GRANTED. The case will be placed back on the active docket as to that claim. In light of this ruling, the Magistrate Judge shall hold a status conference with the parties and reset any applicable deadlines as necessary. A new trial date will be reset in due course.

SO ORDERED, this the 30th day of March, 2022.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE